## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

NORTH CENTRAL EMS CORPORATION,
*doing business as* SAVVIK BUYING GROUP

Civil No. 15-2793 (JRT/LIB)

Plaintiff,

v.

BOUND TREE MEDICAL, LLC, and
SARNOVA, INC.

**MEMORANDUM OPINION AND
ORDER ON DEFENDANTS'
PARTIAL MOTION TO DISMISS**

Defendants.

---

John F. Kapacinskas and Emily Unger, **FREDRIKSON & BYRON, PA**, 200 South 6th Street, Suite 4000, Minneapolis, MN 55402, for plaintiff.

Joseph E. Ezzie, Jacqueline K. Matthews, and Robert J. Tucker, **BAKER & HOSTETLER LLP**, Capitol Square, Suite 2100, 65 East State Street, Columbus, OH 43215, and Douglas L. Elsass and Lori A. Johnson, **FRUTH, JAMISON & ELSASS, PLLC**, 80 South 8th Street, Suite 3902, Minneapolis, MN 55402, for defendant Bound Tree Medical, LLC.

Douglas L. Elsass and Lori A. Johnson, **FRUTH, JAMISON & ELSASS, PLLC**, 80 South 8th Street, Suite 3902, Minneapolis, MN 55402, for defendant Sarnova, Inc.

Plaintiff North Central EMS Corporation, doing business as Savvik Buying Group ("Savvik"), operates an emergency medical supply buying consortium that provides volume-pricing discounts to its member organizations ("consortium members"). Defendant Bound Tree Medical, LLC ("BTM") sells emergency medical supplies. BTM is a wholly owned subsidiary of Defendant Sarnova, Inc. ("Sarnova"). In 2009 and 2011, Savvik and BTM executed two contracts. Under the contracts, Savvik agreed to give BTM access to its buying consortium. In exchange, BTM agreed to pay Savvik a small

management fee for all sales to consortium members.  The contracts also included non-solicitation provisions, pricing guarantees, and reporting/disclosure requirements.

In its ten-count complaint, Savvik alleges that BTM and Sarnova breached their contractual obligations by failing to remit the management fee, violating the non-solicitation provisions, charging inconsistent prices, and providing false reports.  Savvik also alleges that Defendants violated the Minnesota Deceptive Trade Practices Act ("MDTPA"), tortiously interfered with Savvik's consortium-member contracts, fraudulently induced Savvik to execute a contract addendum, fraudulently misrepresented sales and pricing information, and were unjustly enriched by failing to pay agreed-upon management fees and taking advantage of joint marketing efforts to solicit consortium members.  Sarnova moves to dismiss the complaint in its entirety.  BTM moves to dismiss all claims except for the breach of contract claims.

The Court will dismiss the breach of contract claims against Sarnova because Sarnova was not a party to any contract with Savvik, and Savvik failed to plead an alter ego theory.  The Court will dismiss the MDTPA claim against both Defendants because Savvik withdrew the claim during oral argument.  The Court will dismiss the tortious interference with a contract claim against BTM because it is barred by the independent duty rule; however, the Court will deny the motion with respect to Sarnova because Savvik has stated a plausible claim for relief.  The Court will dismiss the fraud in the inducement claim against both Defendants because it is pleaded with insufficient particularity.  The Court will dismiss the fraudulent misrepresentation claim against both Defendants because it is barred by the independent duty rule (with respect to BTM only)

and because it is pleaded with insufficient particularity (with respect to both Defendants). Finally, the Court will deny BTM's motion to dismiss the unjust enrichment claim because it is pleaded in the alternative; conversely, the Court will grant the motion with respect to Sarnova because Savvik has failed to state a claim upon which relief can be granted.

## BACKGROUND

Plaintiff Savvik is a non-profit Minnesota corporation.  (Notice of Removal, Ex. 1 (Verified Compl. ("Compl.")) ¶ 7, June 24, 2015, Docket No. 1.)  Founded in 1997, Savvik operates a buying consortium for approximately 3,800 emergency medical services ("EMS") organizations across the United States, including fire departments, ambulance services, and others.  (*Id.* ¶¶ 1, 3, 7.)  Consortium members pay dues to Savvik; in return, Savvik coordinates volume-pricing discounts for EMS products and supplies.  (*Id.* ¶¶ 1, 7.)

Defendant BTM is an Ohio LLC that sells emergency medical supplies to EMS organizations.  (*Id.* ¶ 8.)  BTM is a wholly owned subsidiary of Defendant Sarnova, which is a Delaware Corporation, holding company, and the ultimate parent of BTM. (*Id.* ¶ 9; Defs.' Letter to District Judge at 1, Oct. 20, 2015, Docket No. 28.)[1]  Sarnova acquired BTM in 2008.  (Compl. ¶ 2.)

---

[1] In its complaint, Savvik alleges that BTM is a "division" of Sarnova.  (Compl. ¶ 2.)  In a subsequent letter to the Court, Defendants explained that BTM is actually a wholly owned subsidiary of Sarnova, and that Sarnova was "formed as a holding company and ultimate parent"

(Footnote continued on next page.)

Savvik and BTM have had a business relationship since 2002.  (*Id.* ¶¶ 12-15.)  In 2010, Savvik issued a bid request seeking a vendor to sell emergency medical supplies and equipment to its consortium members.  (*Id.* ¶ 17.)  BTM submitted a bid, which Savvik accepted in December 2010.  (*Id.* ¶¶ 17-18.)  The parties subsequently executed a contract, effective January 1, 2011.  (*Id.* ¶ 19.)  Sarnova was not a party to this contract.  Savvik and BTM amended the contract in 2011 and 2013, and executed an addendum in 2015 ("2015 Addendum").  (*Id.* ¶¶ 20, 22, 26.)  The contract, the two amendments, and the 2015 Addendum are referred to collectively herein as the "MSE Agreement."  During the hearing on this motion, both Savvik and BTM stated that the MSE Agreement terminated in August 2015.

The MSE Agreement contained four relevant terms.  First, the agreement included a non-solicitation provision.  (*Id.* ¶¶ 33, 35.)  Under this provision, BTM was prohibited from selling its products directly to consortium members without going through Savvik.  (*Id.* ¶¶ 33-34.)  Second, the agreement included a "Market Competitiveness Guarantee."  (*Id.* ¶¶ 42-43.)  Under this guarantee, BTM agreed to charge consortium members "its 'best,' 'lowest,' 'most favored customer' prices."  (*Id.* ¶ 42.)  Third, the agreement required BTM to pay Savvik a three percent contract management fee for all consortium-member purchases.  (*Id.* ¶ 51.)  Fourth, the agreement required BTM to disclose to

---

(Footnote continued.)

of BTM.  (Defs.' Letter to District Judge at 1.)  In a response letter to the Court, Savvik stated that it "does not object to the Court's consideration of this information."  (Pl.'s Letter to District Judge at 1, Oct. 27, 2015, Docket No. 29.)  Accordingly, the Court will consider the information in deciding the present motion.

- 4 -

Savvik all of its pre-existing and present contracts with consortium members, as well as monthly, quarterly, and annual sales and pricing reports.  (*Id.* ¶¶ 57-58, 60, 62-64.)

In 2011, Savvik and BTM also executed a Uniforms and Apparel Contract ("U&A Agreement").  (*Id.* ¶ 68.)  Again, Sarnova was not a party to this contract.  Similar to the MSE Agreement, the U&A Agreement included a non-solicitation provision, a "Market Competitiveness Guarantee," a contract management fee, and various disclosure requirements.  (*Id.* ¶¶ 69-73.)  At the hearing on this motion, both Savvik and BTM informed the Court that the U&A Agreement terminated in August 2015.

On June 3, 2015, Savvik filed a ten-count complaint against BTM and Sarnova in Minnesota state court.  BTM and Sarnova removed the case to federal court on the basis of diversity jurisdiction.  (Notice of Removal, June 24, 2015, Docket No. 1.)  The ten counts are as follows:

- **Count I – Breach of Contract**:  Savvik alleges that BTM and Sarnova breached the MSE Agreement by violating the non-solicitation provision.  (Compl. ¶¶ 79-83.)

- **Count II – Breach of Contract**:  Savvik alleges that BTM and Sarnova breached the MSE Agreement by violating the "Market Competitiveness Guarantee."  (*Id.* ¶¶ 84-88.)

- **Count III – Breach of Contract**:  Savvik alleges that BTM and Sarnova breached the MSE Agreement by failing to remit a three percent contract management fee for all consortium-member purchases.  (*Id.* ¶¶ 89-93.)

- **Count IV – Breach of Contract**:  Savvik alleges that BTM and Sarnova breached the MSE Agreement by failing to accurately disclose all of its contracts, arrangements, pricing information, and sales to consortium members.  (*Id.* ¶¶ 57-61, 94-98.)

- **Count V – Breach of Contract**:  Savvik alleges that BTM and Sarnova breached various provisions of the U&A Agreement.  (*Id.* ¶¶ 68-78, 99-103.)

- **Count VI – Minnesota Deceptive Trade Practices Act**:  Savvik alleges that BTM and Sarnova violated the MDTPA.  (*Id.* ¶¶ 104-10.)

- **Count VII – Tortious Interference with Contract**:  Savvik alleges that BTM and Sarnova tortiously interfered with its consortium-member contracts by encouraging members to buy directly from BTM and by causing consortium members to terminate their contracts with Savvik.  (*Id.* ¶¶ 36-40, 111-17.)

- **Count VIII – Fraud in the Inducement**:  Savvik alleges that BTM and Sarnova fraudulently induced Savvik to execute the 2015 Addendum by falsely representing during negotiations that BTM would adhere to the terms of the 2015 Addendum.  (*Id.* ¶¶ 118-23.)  But for this false representation, Savvik asserts that it would not have executed the 2015 Addendum.  (*Id.* ¶¶ 31, 121-22.)

- **Count IX – Fraudulent Misrepresentation**:  Savvik alleges that BTM and Sarnova fraudulently misrepresented membership fee lists, monthly reports, and price volume reports.  (*Id.* ¶ 124-129.)

- **Count X – Unjust Enrichment**:  Savvik alleges that BTM and Sarnova were unjustly enriched because they improperly withheld contractual management fees and took advantage of "joint marketing efforts" in order to solicit consortium members.  (*Id.* ¶¶ 131-33.)  This claim is pleaded in the alternative.

On July 1, 2015, BTM and Sarnova brought a partial motion to dismiss.  (Defs.' Partial Mot. to Dismiss, July 1, 2015, Docket No. 12.)  Sarnova seeks to dismiss all ten counts in the complaint, while BTM seeks to dismiss only Counts VI-X.  (*Id.*)

## ANALYSIS

## I.   RULE 12(B)(6) STANDARD OF REVIEW

In reviewing a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), the Court considers all facts alleged in the complaint as true to determine if the complaint states a "claim to relief that is plausible on its face."  *See, e.g.*, *Braden v. Wal-Mart Stores, Inc.,* 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  To survive a motion to dismiss, a complaint must provide more than

"'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'"
*Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).
Although the Court accepts the complaint's factual allegations as true, it is "not bound to
accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at
555 (internal quotation mark omitted). "A claim has facial plausibility when the plaintiff
pleads factual content that allows the court to draw the reasonable inference that the
defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Where a
complaint pleads facts that are merely consistent with a defendant's liability, it stops
short of the line between possibility and plausibility," and therefore must be dismissed.
*Id.* (internal quotation marks omitted).

## II.     COUNTS I-V: BREACH OF CONTRACT

Sarnova has moved to dismiss all five of Savvik's breach of contract claims based
on two arguments: (1) Sarnova was not a party to either the MSE Agreement or the U&A
Agreement, and (2) Savvik failed to adequately plead an alter ego theory of liability. The
Court agrees with both arguments and will grant Sarnova's motion to dismiss.

As an initial matter, the Court recognizes that the breach of contract claims present
a close choice-of-law question – Savvik is a Minnesota non-profit, BTM is an Ohio LLC,
and Sarnova is a Delaware corporation. However, because the parties at oral argument
did not dispute that Minnesota law applies, the Court will also assume that Minnesota law
applies.

Applying Minnesota law, the Court first finds that Sarnova cannot be held liable under traditional breach of contract theories because it was not a party to any contract with Savvik. A viable breach of contract claim requires "the existence of a contract." *City of Farmington Hills Emps. Ret. Sys. v. Wells Fargo Bank, N.A.*, 281 F.R.D. 347, 351 (D. Minn. 2012). Here, Savvik has not alleged that it had any contractual relationship with Sarnova. (Compl. ¶¶ 80, 85, 90, 95, 100 (alleging that MSE and U&A Agreements were "entered into by BTM and Savvik").) Thus, absent a contract, Savvik's claims can only survive based on an alter ego theory of liability. In other words, to hold Sarnova liable for its subsidiary's breach of contract, Savvik must allege facts allowing it to pierce BTM's veil. For the reasons discussed below, the Court finds that Savvik has failed to state a plausible alter ego claim.

Under Minnesota law, "there is a 'presumption of separateness' between a parent and subsidiary corporation." *Bank of Montreal v. Avalon Capital Grp., Inc.*, No. 10-591, 2012 WL 1110691, at *9 (D. Minn. Apr. 3, 2012) (quoting *Ass'n of Mill & Elevator Mut. Ins. Co. v. Barzen Int'l, Inc.*, 553 N.W.2d 446, 449 (Minn. Ct. App. 1996)). However, "[a] court may pierce the corporate veil to hold a party liable for the acts of a corporate entity if the entity is used for a fraudulent purpose or the party is the alter ego of the entity." *Id.* (internal quotation mark omitted) (quoting *Equity Tr. Co. Custodian ex rel. Eisenmenger IRA v. Cole*, 766 N.W.2d 334, 339 (Minn. Ct. App. 2009)). This alter ego framework applies to both corporations and LLCs. Minn. Stat. § 322B.303, subd. 2 ("The case law that states the conditions and circumstances under which the corporate

veil of a corporation may be pierced under Minnesota law also applies to limited liability

companies.").

To state an alter ego claim, a Minnesota plaintiff must plead facts satisfying a two-

prong test:

> The first prong focuses on the shareholder's relationship to the corporation.
> Factors that are significant to the assessment of this relationship include
> whether there is insufficient capitalization for purposes of corporate
> undertaking, a failure to observe corporate formalities, nonpayment of
> dividends, insolvency of debtor corporation at time of transaction in
> question, siphoning of funds by dominant shareholder, nonfunctioning of
> other officers and directors, absence of corporate records, and existence of
> the corporation as merely a facade for individual dealings.  The second
> prong requires showing that piercing the corporate veil is necessary to
> avoid injustice or fundamental unfairness.

*Bank of Montreal*, 2012 WL 1110691, at *9 (quoting *Barton v. Moore,* 558 N.W.2d 746,

749 (Minn. 1997)).

In the context of a parent-subsidiary relationship, the first prong of the above test

centers on whether the two entities are "sufficiently intertwined."  *Cooper v. Lakewood

Eng'g & Mfg. Co.*, 45 F.3d 243, 246 (8th Cir. 1995) (citing *Matter of Hibbing Taconite

Co.*, 431 N.W.2d 885, 893 (Minn. Ct. App. 1988)).  Simply alleging that "two companies

share employees, offices, and equipment" is not enough.  *SICK, Inc. v. Motion Control

Corp.*, No. 01-1496, 2003 WL 21448864, at *9 (D. Minn. June 19, 2003).  "Parents of

wholly owned subsidiaries necessarily control[,] direct, and supervise the subsidiaries to

some extent."  *Omega Demolition Corp. v. Hays Grp., Inc.*, 306 F.R.D. 225, 230 n.3

(D. Minn. 2015) (internal quotation mark omitted) (quoting *Team Impressions v.

Chromas Techs. Can., Inc.*, No. 02-5323, 2003 WL 132498, at *3 (N.D. Ill. Jan. 16,

2003)).  Instead, the plaintiff must allege facts showing that "a corporate form is a mere 'facade' for the dealings of another entity."  *SICK, Inc.*, 2003 WL 21448864, at *9.  The second prong of the test centers on whether "the corporate entity has been operated as a constructive fraud or in an unjust manner."  *Cooper*, 45 F.3d at 246 (internal quotation mark omitted) (quoting *White v. Jorgenson*, 322 N.W.2d 607, 608 (Minn. 1982)).

Applying this law, the Court finds that Savvik has not satisfied its pleading burden.  First, Savvik has not pleaded any facts directly addressing either prong of the operative test.   There is nothing in the complaint regarding BTM's insufficient capitalization, failure to observe LLC formalities, nonpayment of distributions, insolvency, siphoning of funds, nonfunctioning management structure, absence of business records, or existence as a mere facade for Sarnova.  Moreover, Savvik has not alleged any facts to indicate that piercing BTM's veil is necessary to avoid injustice or fundamental unfairness.  To the contrary, Savvik still has five viable breach of contract claims against BTM.

The closest that Savvik comes to meeting its pleading burden is by alleging that (1) "Sarnova . . . negotiates contracts on behalf of BTM," (2) "Sarnova substantially directs and controls BTM's operations, including its sales and marketing operations," (3) Sarnova sales representatives encouraged Savvik members to buy directly from BTM, and (4) executives common to both companies participated in negotiations for the 2015 Addendum.  (Compl. ¶¶ 2, 9, 36-40.)  While these allegations, accepted as true, may show that Sarnova and BTM have a close relationship, they are insufficient to establish that BTM was Sarnova's alter ego or that BTM was operated as a constructive fraud or in

an unjust manner.  Mere "interconnectedness" cannot establish alter ego liability.  *SICK, Inc.*, 2003 WL 21448864, at *9.

Savvik's central argument against dismissal is that it should be permitted to engage in discovery on the relationship between BTM and Sarnova.  The Court, however, rejects this argument.  To support its position, Savvik cites a case decided by this Court, *A.P.I., Inc. v. Home Ins. Co.*, 706 F. Supp. 2d 926 (D. Minn. 2010).  In *A.P.I., Inc.*, this Court denied the defendant's motion for judgment on the pleadings, finding that "there are fact questions about whether the separate corporate existences . . . were disregarded." *Id.* at 942.  *A.P.I., Inc.* is distinguishable, however, because this Court also found that the plaintiff stated a plausible alter ego claim.  *Id.* ("[P]laintiffs have pleaded plausible vicarious liability claims.")  Here, Savvik has not stated a plausible alter ego claim. Savvik also cites a Seventh Circuit case, *Emery v. Am. Gen. Fin., Inc.*, 134 F.3d 1321, 1323 (7th Cir. 1998), for the general proposition that courts should decline "to create a Catch-22 situation in which a complaint is dismissed because of the plaintiff's inability to obtain essential information without pretrial discovery."  While the Court does not disagree with this general proposition, the Court finds it inapplicable here.  Savvik has not adequately explained what information it has been unable to obtain or why it could not state a plausible alter ego claim absent discovery.

Altogether, Savvik's complaint is too sparse on details to support an alter ego theory.  Even assuming all facts in the complaint to be true, the Court could not "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  The Court will thus dismiss the breach of contract claims against Sarnova.

## III.   COUNT VI: MINNESOTA DECEPTIVE TRADE PRACTICES ACT

During the hearing on this motion, Savvik stated that it was withdrawing its MDTPA claim against both Defendants.  Accordingly, the Court will dismiss Count VI.

## IV.   COUNT VII: TORTIOUS INTERFERENCE WITH CONTRACT

### A.   BTM

The Court will dismiss Savvik's tortious interference with a contract claim against BTM because Savvik has failed to state a claim upon which relief can be granted.  As will be discussed below, Savvik's claim is barred by the independent duty rule.

Under Minnesota law, the independent duty rule provides that "a plaintiff cannot recover damages in tort for an alleged breach of contract, except in 'exceptional cases where the defendant's breach of contract constitutes or is accompanied by an independent tort.'"  *TCF Nat'l Bank v. Mkt. Intelligence, Inc.*, No. 11-2717, 2012 WL 3031220, at *4 (D. Minn. July 25, 2012) (quoting *Wild v. Rarig*, 234 N.W.2d 775, 789 (Minn. 1975)). "'[A] tort is independent from a breach of contract (and a separate cause of action can thus be brought) if a relationship would exist which would give rise to the legal duty without enforcement of the contract promise itself.'"  *Id.* (quoting *Constr. Sys ., Inc. v. Gen. Cas. Co. of Wis.*, No. 09-3697, 2011 WL 3625066, at *9 (D. Minn. Aug.17, 2011)).

The crux of Savvik's claim is that BTM tortiously interfered with its consortium-member contracts by encouraging members to leave the consortium and to purchase directly from BTM.  The Court, however, finds that BTM had no independent duty, outside of the MSE and U&A Agreements, to refrain from soliciting Savvik members.

While BTM's alleged conduct may have been a violation of its contractual non-solicitation obligations, it was not otherwise improper.   BTM has every right to sell directly to EMS organizations without going through Savvik – such conduct does not, on its own, constitute tortious interference.   *See United Wild Rice, Inc. v. Nelson*, 313 N.W.2d 628, 633 (Minn. 1982) (noting that "[c]ompetition is favored in the law" and holding that proper competition cannot give rise to a tortious interference claim).   Thus, because the only thing preventing BTM from soliciting consortium members was "enforcement of the contract promise itself," Savvik's claim is barred by the independent duty rule.   Savvik may have a viable breach of contract claim, but not one for tortious interference.

Savvik raises two counter-arguments against application of the independent duty rule, but the Court finds both to be unavailing.   First, Savvik argues that BTM is not a competitor and therefore had no justification for soliciting Savvik members.   Savvik points out that BTM is a for-profit seller of EMS supplies, while Savvik is a non-profit buying consortium.   This argument, however, misses the mark.   While Savvik is not driven by profits, it nevertheless wants EMS organizations to purchase supplies through its buying consortium so that it can collect member dues and management fees from vendors.   BTM, on the other hand, has an incentive to sell directly to Savvik members to avoid paying a management fee.   Although indirect, both Savvik and BTM vie for the same business. This is the definition of competition.

Second, Savvik argues that BTM has

a duty to refrain from enticing Savvik's members to leave their membership with Savvik to receive deeper discounts directly from BTM because such conduct would undercut the efficacy of Savvik's bargaining power as a buying group by allowing [BTM] to increase prices without notice and reduce their own internal transaction costs at Savvik's expense.

(Pl.'s Mem. in Opp'n to Defs.' Partial Mot. to Dismiss at 20-21, July 22, 2015, Docket No. 17.)  However, Savvik does not cite, and this Court could not find, any supporting case law.  Instead, Savvik seems to describe nothing more than healthy competition in the market place.  As discussed above, such competition does not constitute tortious interference with a contract.

### B.      Sarnova

Conversely, the Court will deny Sarnova's motion to dismiss Count VII.  While the allegations against Sarnova appear to be weak, the Court nevertheless finds that Savvik has met its pleading burden.  Under Minnesota law, to state a claim for tortious interference with a contract, a plaintiff must allege: "(1) the existence of a contract; (2) the alleged wrongdoer's knowledge of the contract; (3) intentional procurement of its breach; (4) without justification; and (5) damages."  *N. PCS Servs., LLC v. Sprint Nextel Corp.*, No. 05-2744, 2006 WL 1072075, at *3 (D. Minn. Apr. 21, 2006) (quoting *Kallok v. Medtronic*, 573 N.W.2d 356, 362 (Minn. 1998)).  Here, accepting the allegations in the complaint as true, Savvik has pleaded facts that plausibly satisfy all five elements.

First, Savvik alleges the existence of various contracts between itself and consortium members.  (Compl. ¶ 112.)   Second, Savvik alleges that Sarnova had knowledge of these contracts.  (*Id.* ¶¶ 40, 113.)   Third, Savvik alleges that Sarnova

intentionally procured the breach of these contracts, including contracts with Nature Coast EMS, Alaska Members, and Schaefer Ambulance. (*Id.* ¶ 36-40, 114-15.) Fourth, Savvik alleges lack of justification. (*Id.* ¶ 116.) While Savvik does not explicitly spell out why Sarnova lacked justification, it can be reasonably inferred from the Complaint as a whole – even if Sarnova itself was not bound by MSE or U&A Agreements, it had no right to help its subsidiary, BTM, induce consortium members to breach their contracts with Savvik. Finally, Savvik alleges $50,000 in damages. (*Id.* ¶ 117.)

Sarnova's only counterargument is that Savvik has failed to plead "intentional procurement of breach," but the Court is not persuaded. According to Sarnova, Savvik merely alleges that it caused consortium members to **terminate**, not **breach**, their contracts. Sarnova asserts that because consortium members may have had the contractual right to terminate, Savvik failed to allege one full element of its claim – procurement of breach. *See Superior Edge, Inc. v. Monsanto Co.*, 964 F. Supp. 2d 1017, 1043 (D. Minn. 2013) (holding that a plaintiff must establish that the defendant intentionally procured the breach of an existing contract to prevail on a tortious interference with contract claim). To support this argument, Sarnova points to the following language from Savvik's complaint: "[Sarnova] intentionally interfered with Savvik's relationships with its members . . . by encouraging these members to **violate** their contractual obligations to Savvik . . . . Some of Savvik's members have **terminated** their membership as a result of [Sarnova's] conduct." (Compl. ¶¶ 114-15 (emphasis added).) The Court, however, rejects this attempt to parse Savvik's word choice. Although Savvik uses the words "violate" and "terminated" instead of, for example,

"breach" and "wrongfully terminated," the meaning of the allegation is clear. Furthermore, in the event that Sarnova is ultimately proven correct – that EMS members did have a right to terminate their contracts or there was no procurement of breach – then the claim can be resolved on this ground at a later stage. For now, Savvik's allegations are sufficient to survive this motion to dismiss.

## V.    COUNT VIII: FRAUD IN THE INDUCEMENT

The Court will dismiss Count VIII against both Defendants because Savvik's allegations lack particularity.[2]  Federal Rule of Civil Procedure 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances

---

[2] BTM also seeks dismissal on the ground that Savvik's claim is barred by the independent duty rule. According to BTM, a fraud claim related to a contract is not actionable unless it is "based upon a misrepresentation that was outside of or collateral to the contract." *AKA Distrib. Co. v. Whirlpool Corp.*, 137 F.3d 1083, 1086 (8th Cir. 1998). BTM asserts that Savvik's fraud in the inducement claim is nothing more than a repackaged breach of contract claim. Although this statement of law is accurate, the Court rejects BTM's argument. The Minnesota Supreme Court has held that a "misrepresentation of a present intention" can constitute fraud in the inducement, so long as it can be shown "that the promisor had no intention to perform at the time the promise was made." *Vandeputte v. Soderholm*, 216 N.W.2d 144, 147 (Minn. 1974). Applying *Vandeputte*, courts have found that entering into a contract without a present intent to perform is actionable fraud. *See, e.g., Alexander v. Bond*, No. 04-1323, 2005 WL 2406031, at *7 (D. Minn. Sept. 29, 2005) (denying the defendant's motion for summary judgment on a fraud in the inducement claim where the plaintiff alleged that the defendant misrepresented its present intent to comply with contract terms during contract negotiations). Here, Savvik makes that exact allegation: BTM misrepresented its present intent to comply with the 2015 Addendum during negotiations in order to induce Savvik to execute the addendum. Although this claim is closely related to the breach of contract claims, it is nevertheless collateral and, therefore, not barred by the independent duty rule. This distinction is important even though the Court will still dismiss Count VIII. Because the claim only fails for lack of particularity, the dismissal against both Defendants will be **without** prejudice. *See Riley v. Cordis Corp.*, 625 F. Supp. 2d 769, 787 n.11, 790 (D. Minn. 2009) (dismissing without prejudice a fraud claim lacking particularity); *Best Buy Stores, L.P. v. Developers Diversified Realty Corp.*, No. 05-2310, 2007 WL 1242890, at *2 (D. Minn. Apr. 27, 2007) (same).

constituting fraud or mistake." Fed. R. Civ. P. 9(b). The Eighth Circuit has interpreted the term "circumstances" of fraud to include "the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." *Commercial Prop. Invs., Inc. v. Quality Inns Int'l, Inc.*, 61 F.3d 639, 644 (8th Cir. 1995) (quoting *Bennett v. Berg*, 685 F.2d 1053, 1062 (8th Cir. 1982), *adhered to on reh'g*, 710 F.2d 1361 (8th Cir. 1983) (en banc)). The complaint must read like the opening paragraph of a newspaper article: it must contain the "who, what, when, where and how" of the alleged fraud. *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 549-50 (8th Cir. 1997) (quoting *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)). One of the primary purposes of the rule is to ensure that a defendant can adequately respond and prepare a defense to charges of fraud. *Greenwood v. Dittmer*, 776 F.2d 785, 789 (8th Cir. 1985). As a result, "conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." *Commercial Prop. Invs.*, 61 F.3d at 644; *Parnes*, 122 F.3d at 549.

Here, Savvik does not cite any specific dates for when the fraud in the inducement occurred and instead gives only a broad two-month time frame (December 2014 and January 2015). Savvik also does not allege where the misrepresentations took place or the method of communication. *See Ransom v. VFS, Inc.*, 918 F. Supp. 2d 888, 899 (D. Minn. 2013) (finding that a fraud claim lacked particularity because the complaint did not allege "where these representations were made"). Furthermore, while Savvik identifies Darrell Hughes and Mark Dougherty as making false representations, it does not link either individual to any particular statement. *Id.* ("The complaint fail[ed] to

identify what statements constitute the alleged fraud . . . ."). Finally, Savvik does not sufficiently differentiate between BTM and Sarnova. Savvik merely alleges that "**BTM and Sarnova** made representations to Savvik." (Compl. ¶ 120 (emphasis added).) As the Eighth Circuit has made clear, a fraud claim does not satisfy Rule 9(b) if it "attribute[s] alleged false statements to 'defendants' generally." *Trooien v. Mansour*, 608 F.3d 1020, 1030 (8th Cir. 2010). Savvik's generalized and conclusory allegations therefore do not satisfy Rule 9(b).

## VI.   COUNT IX: FRAUDULENT MISREPRESENTATION

The Court will also dismiss the fraudulent misrepresentation claim against both Defendants. First, the independent duty rule bars the claim against BTM. Second, with respect to both Defendants, the claim is pleaded with insufficient particularity.[3]

As noted above, pursuant to the independent duty rule, "a plaintiff cannot recover damages in tort for an alleged breach of contract, except in 'exceptional cases where the defendant's breach of contract constitutes or is accompanied by an independent tort.'" *TCF Nat'l Bank*, 2012 WL 3031220, at *4 (quoting *Wild*, 234 N.W.2d at 789). "A fraud claim independent of the contract is actionable, but it must be based upon a misrepresentation that was outside of or collateral to the contract, such as many claims of

---

[3] Because the claim against BTM is barred both by the independent duty rule and for lack of particularity, it will be dismissed **with** prejudice. On the other hand, because the claim against Sarnova only fails for lack of particularity, that claim will be dismissed **without** prejudice. *See Riley*, 625 F. Supp. 2d at 787 n.11, 790; *Best Buy Stores, L.P.*, 2007 WL 1242890, at *2.

fraudulent inducement." *AKA Distrib. Co. v. Whirlpool Corp.*, 137 F.3d 1083, 1086 (8th Cir. 1998).

Here, the Court finds that the alleged fraudulent misrepresentation was neither outside of nor collateral to the contracts between Savvik and BTM.  Savvik asserts that BTM intentionally provided false and inaccurate membership lists, monthly reports, and pricing volume reports.  BTM's duty to disclose this information, however, arose solely from the MSE Agreement and the U&A Agreement.  Accordingly, while Savvik may have a viable breach of contract claim against BTM, it cannot state a separate cause of action for fraud.

Savvik's claim also fails, as against both Defendants, because it does not satisfy Rule 9(b).  First, Savvik gives only the general timeframe for when the misrepresentations occurred (March 2015).  Second, Savvik does not identify any specific reports, lists, misrepresentations, or omissions on the part of either Defendant. *See Ransom,* 918 F. Supp. 2d at 899 (finding that a fraud claim lacked particularity because the complaint did not specify what "figures" were misrepresented "or in what manner the figures had been misrepresented").  Lastly, Savvik again does not differentiate between BTM and Sarnova. *See Trooien*, 608 F.3d at 1030.  Savvik merely alleges that "**Defendants** made material misrepresentations," "**Defendants** knew these statements and omissions . . . were false at the time they were made," and "**Defendants** intended to induce Savvik's reliance."  (Compl. ¶¶ 125-27 (emphasis added).)  These generalized allegations are fatal to Savvik's claim.

## VII.   COUNT X: UNJUST ENRICHMENT

### A.   BTM

BTM argues for dismissal of Count X on the premise that, under Minnesota law, unjust enrichment is not available where there is an express contract between the parties and the plaintiff has an adequate legal remedy. *See United States v. Bame*, 721 F.3d 1025, 1030 (8th Cir. 2013); *Sterling Capital Advisors, Inc. v. Herzog*, 575 N.W.2d 121, 126 (Minn. Ct. App. 1998) (citing *Sharp v. Laubersheimer*, 347 N.W.2d 268, 271 (Minn. 1984)).  BTM asserts that Savvik has an adequate legal remedy for its unjust enrichment allegations – breach of contract.  While the Court does not disagree with this statement of Minnesota law, BTM's "argument is not appropriate at this early stage of the case." *Masterson Pers., Inc. v. The McClatchy Co.*, No. 05-1274, 2005 WL 3132349, at *7 (D. Minn. Nov. 22, 2005).  Federal Rule of Civil Procedure 8(d)(2) permits a party to "plead alternative theories of relief under both legal and equitable grounds." *LePage v. Blue Cross & Blue Shield of Minn.*, No. 08-584, 2008 WL 2570815, at *8 (D. Minn. June 25, 2008).  "While [Savvik] may not obtain double recovery, [it is] free to pursue relief under" multiple theories.  *Id.* (internal quotation mark omitted); *see also Masterson Pers., Inc.*, 2005 WL 3132349, at *7 (denying a motion to dismiss because the plaintiff "provided adequate factual grounds and properly pled the unjust enrichment claim as an alternative to the breach of contract claim").  Thus, because Savvik has stated a plausible **alternative** claim for unjust enrichment, the Court will deny BTM's motion to dismiss.

B.      Sarnova

On the other hand, the Court will dismiss the unjust enrichment claim against Sarnova.  To state a claim for unjust enrichment, "a plaintiff must show that another party knowingly received something of value to which he was not entitled, and that the circumstances are such that it would be unjust for that person to retain the benefit." *Bohnhoff v. Wells Fargo Bank, N.A.,* 853 F. Supp. 2d 849, 857 (D. Minn. 2012) (internal quotation marks omitted).   Here, Savvik has failed to allege that Sarnova received something of value to which it was not entitled.

First, Sarnova could not have improperly retained the contract management fee because it had no obligation to remit a fee in the first place.  Sarnova was not a party to either the MSE Agreement or U&A Agreement and, for the reasons explained above, Savvik has not pleaded a viable alter ego theory.  *Cf. Masterson Pers., Inc.*, 2005 WL 3132349, at *5 (dismissing an unjust enrichment claim against a parent corporation for benefits conferred on its subsidiary because the complaint did "not contain factual allegations . . . that [the parent corporation was] acting beyond the parameters of its status as an investor").  Second, Savvik has not adequately alleged that Sarnova benefited from joint marketing efforts.  BTM, not Sarnova, sold emergency medical supplies through the buying consortium.  And, once more, Savvik has not pleaded a viable alter ego theory. *Cf. id.*  Third and finally, the Court rejects Savvik's argument that Sarnova was unjustly enriched solely because its subsidiary, BTM, profited from withholding contract management fees and taking advantage of joint marketing efforts.  As other courts have recognized, and this Court agrees, such a "theory would eviscerate [the] long established

respect for the corporate form" because it would mean that "*whenever* a corporation is liable for some unlawful activity, any parent of that corporation . . . could be liable on a claim of unjust enrichment."  *In re Bank of N.Y. Mellon Corp. Forex Transactions Litig.*, 921 F. Supp. 2d 56, 90 (S.D.N.Y. 2013); *see also Spires v. Hosp. Corp. of Am.*, 289 Fed. App'x 269, 273 (10th Cir. 2008) (rejecting an unjust enrichment claim against a parent corporation based solely on alleged benefits received by its subsidiaries); *United States v. Dean Van Lines, Inc.*, 531 F.2d 289, 293 (5th Cir. 1976) (rejecting an unjust enrichment claim against shareholders of a corporation based solely on alleged benefits received by the corporation).   Minnesota law on corporate, shareholder, and parent-subsidiary liability plainly would not allow this result.  Accordingly, the Court finds that Savvik has failed to state a claim for unjust enrichment against Sarnova.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' Partial Motion to Dismiss [Docket No. 12] is **GRANTED in part** and **DENIED in part** as follows:

1.     The motion is **GRANTED** as to Counts I, II, III, IV, V, VI, and X relating to Sarnova only.  Those counts relating to Sarnova are **DISMISSED with prejudice**.

2.     The motion is **GRANTED** as to Counts VI, VII, and IX relating to BTM only.  Those counts relating to BTM are **DISMISSED with prejudice**.

3.     The motion is **DENIED** as to Count VII relating to Sarnova.

4.      The motion is **GRANTED** as to Count VIII.  Count VIII relating to both BTM and Sarnova is **DISMISSED without prejudice**.

5.      The motion is **GRANTED** as to Count IX relating to Sarnova.  Count IX relating to Sarnova is **DISMISSED without prejudice**.

6.      The motion is **DENIED** as to Count X relating to BTM.


DATED:  February 10, 2016
at Minneapolis, Minnesota.

_____s/ John R. Tunheim_____
JOHN R. TUNHEIM
Chief Judge
United States District Court